DUANE MORRIS LLP
1540 Broadway
New York, New York 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
William C. Heuer, Esq.
James J. Vincequerra, Esq.
wheuer@duanemorris.com
jvincequerra@duanemorris.com
*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| SIFCO S.A., | Case No. 14-[_____] |
| Debtor in a Foreign Proceeding. | |

**VERIFIED PETITION FOR RECOGNITION OF FOREIGN
MAIN PROCEEDING AND REQUEST FOR CHAPTER 15 RELIEF**

Rubens Leite, in his capacity as the Foreign Representative (the "Foreign Representative") of the above-captioned debtor, SIFCO S.A. ("SIFCO"), whose voluntary corporate reorganization proceedings under the laws of Brazil currently are pending before the *Vara de Falencias e Recuperacoes Judiciais da Comarca de Sao Paulo* (the "Brazilian Court" and "Brazilian Proceeding"), respectfully submits this verified petition (the "Petition") (i) for recognition by this Court as SIFCO's "foreign representative" as defined in section 101(24) of title 11, United States Code §§ 101 *et seq.* (the "Bankruptcy Code") and (ii) for recognition of the Brazilian Proceeding as a "foreign main proceeding" pursuant to Bankruptcy Code sections 1515, 1517 and 1520. In support of the Petition, the Foreign Representative has filed contemporaneously herewith his Declaration as Foreign Representative (the "Foreign Representative Declaration"), which is incorporated herein by reference. In addition, the Foreign Representative also has filed contemporaneously herewith the (i) Declaration of Geraldo Gouveia Junior, Brazilian counsel to SIFCO (the "Foreign Counsel Declaration"); and (ii)

DM3\2881336.3

Affidavit of William C. Heuer in Support of the Foreign Representative's Ex Parte Application for an Order Granting (a) Provisional Relief and Injunction and (b) Scheduling a Hearing (the "Heuer Affidavit"), both of which, too, are incorporated herein by reference.

**Preliminary Statement**

1. SIFCO produces forged and precision machine parts for the automotive industry targeting predominantly the global truck and bus manufacturing markets.

2. To effectuate a restructuring of its business and financial affairs, on April 22, 2014 (prevailing Brazil time), SIFCO voluntarily filed a petition for commencement of a corporate reorganization proceeding (recuperacao judicial) in the Brazilian Court under Brazil's Federal Law No. 11,101 of February 9, 2005 (the "Brazilian Restructuring Law"). In connection with commencement of the Brazilian Proceeding, SIFCO's Board of Directors appointed the Foreign Representative and specifically authorized the Foreign Representative to seek relief in this Court under Chapter 15 of the Bankruptcy Code.

3. As is set forth in the Foreign Counsel Declaration, following filing of the petition commencing the Brazilian Proceeding, the Brazilian Court will examine the Brazilian petition and determine whether SIFCO should be permitted to undertake judicial reorganization. If the Brazilian petition is granted, a stay of seizures, foreclosures and execution of judgments will be put in place, and SIFCO will begin the process of reorganization. Additional relief in the nature of provisional injunctions is available, and will be sought by SIFCO, immediately upon commencement of the Brazilian Proceeding.

4. In the Brazilian Proceeding, SIFCO intends to achieve confirmation of a debt restructuring plan in accordance with the Brazilian Restructuring Law (which is more fully described below).

5. The restructuring contemplated to be undertaken in the Brazilian Proceeding will achieve a significant restructuring of SIFCO's business. SIFCO anticipates that it will emerge

2

from this restructuring process a stronger, more competitive company, and believes that the benefits to be gained from the restructuring process will enable SIFCO to remain a premier supplier of forged and precision machine parts for the global truck and bus manufacturing industry.

6. However, pending development and approval of a restructuring plan by the Brazilian Court, SIFCO requires the protection afforded to foreign debtors pursuant to Chapter 15 of the Bankruptcy Code in order to protect its valuable assets in the United States. For example, SIFCO has interests in a certain collateral account maintained by The Bank of New York Mellon in New York, as well as rights under an exclusive supply contract with Westport Axle Corp. ("Westport") covering 100% of Westport's requirements for certain automotive products sold in the United States.

7. SIFCO seeks the protections of Chapter 15 to ensure consistent and smooth operations without disruption while the Brazilian Proceeding moves forward. Protection of SIFCO's United States-based assets and ensuring that there are no operational disruptions in the United States, will help ensure that SIFCO's restructuring in the Brazilian Proceeding proceeds quickly. Thus, by way of separate motion, SIFCO has sought a temporary restraining order and preliminary injunctive relief pending a hearing on recognition.

## Jurisdiction

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated July 10, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

9. This case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by filing of the Petition for recognition of the Brazilian Proceeding in

3

accordance with section 1515 of the Bankruptcy Code by SIFCO's duly appointed Foreign Representative.

10. SIFCO has assets and accounts located in this District, and venue is thus proper pursuant to 28 U.S.C. § 1410(3).

11. The statutory bases for relief are sections 1504, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

## Background

### I. Sifco's Business

12. SIFCO began its operations in 1958, and today it believes that it is the sole producer and supplier of front axles and I-beams for trucks and buses in South America. SIFCO's management and engineers are located outside São Paulo, Brazil in the City of Jundiai, Brazil, where it also maintains manufacturing and foundry facilities.

13. In the 1960's, SIFCO was dedicated to supplying the then-recently created domestic Brazilian automotive industry. Eventually, SIFCO began producing high technology forging components in compliance with the most comprehensive requirements of several automotive industry segments, such as tractors and agricultural machines, among others.

14. In 1971, SIFCO commenced its export operations for the North American Market, and created a distribution subsidiary in 1986, Westport Axle Corp. Westport allowed SIFCO to increase substantially its business in the United States, providing customers reliable technical and logistics support, as well as making possible the introduction of its own products, such as fully-dressed front axles (hub, drum, brake and steering arms), in different segments of the North American Market. Westport was sold in late 2013.

15. In order to respond to the increasing market demand and to strengthen its position in Brazil and in the international market as well, SIFCO invested in the construction of its second industrial unit located in the City of Campinas, Brazil, equipped with state-of-the-art equipment

for a heavy forging line, mainly for I-beam front axles, in which SIFCO is known worldwide. Mercedes Benz, Volvo, Scania, Komatsu and Dana Corporation were among its principal customers.

## II. Sifco's Debt Obligations

16. SIFCO is an obligor under the terms of certain Senior Secured Notes (the "Notes") issued on or about May 27, 2011, with a maturity date in 2016, that were issued into the international capital markets under United States Regulation S by Jefferies & Company, Inc. and Eurovest Global Securities, Inc. Pursuant to the Notes, SIFCO has approximately USD $75,000,000 of indebtedness (principal) outstanding as of the date hereof. The Notes were issued pursuant to a Trust Indenture that also was dated May 27, 2011 (the "Indenture") among SIFCO, as issuer of the Notes, The Bank of New York Mellon, as Trustee, Registrar, New York Paying Agent and Transfer Agent, and The Bank of New York Mellon, acting through its London branch, as London Paying Agent and The Bank of New York Mellon Trust (Japan) Ltd. as Principal Paying Agent.

17. The Notes are collateralized through the grant of a security interest in certain collateral of SIFCO granted in favor of the Trustee for the benefit of the holders of the Notes and the Trustee, among others, pursuant to an Account Control Agreement dated as of May 27, 2011 (the "Account Control Agreement"). The collateral consists of cash collateral denominated in U.S. dollars currently on deposit in an account (located in New York, New York) maintained by The Bank of New York Mellon, as Depository, Collateral Agent and Securities Intermediary (the "Debt Service Reserve Account"). The security interest and the role of the Trustee, as secured party, are detailed in the Account Control Agreement. Payments by SIFCO under the Notes are current and the amount on deposit pursuant to the Account Control Agreement at this time is USD $8,500,000.

18. The Account Control Agreement provides that if by 10:00 a.m. on the business day prior to a principal or interest payment date under the Notes, SIFCO has not deposited with the Principal Paying Agent an amount equal to the amount of interest due on such payment date, the Depository, upon instructions from the Trustee, shall transfer to the Principal Paying Agent from the Debt Service Reserve Account an amount equal to the interest shortfall. SIFCO notes that an interest payment will be due in June 2014. The Indenture also includes *ipso facto* provisions providing that commencement of restructuring proceedings constitutes an event of default, which accelerates all debt under the Indenture, even though *ipso facto* provisions are unenforceable under the Brazilian Restructuring Laws much as they are unenforceable under the Bankruptcy Code.

19. One of the reasons for commencement of this case under Chapter 15 of the Bankruptcy Code is to protect the funds on deposit pursuant to the Account Control Agreement during the pendency of the Brazilian Proceeding in order to provide for an orderly restructuring process that is fully administered out of the Brazilian Court, without the distraction of piecemeal efforts by particular creditors attempting to gain an advantage to the detriment of others.

**III. Equity**

20. SIFCO is owned (100%) by Sifco Metals Participacoes S.A. which is a privately owned company.

**Commencement of the Brazilian Proceeding**

21. Over the course of the past few years, SIFCO, like many other entities in a variety of industries throughout the world, has faced significant challenges. The worldwide recession that has taken hold since 2007 has created an environment of economic distress for companies and individuals alike, and that environment has impacted SIFCO's operations and sales. In addition, SIFCO's operations were impacted over 2012-13 by an unexpected slowdown of the

truck market where sales volume fell by 36%. Trucks constitute SIFCO's main market, accounting for 72% of sales in 2011.

22. As a result of the foregoing, SIFCO faces financial and operational hurdles that made it prudent for SIFCO to seek relief under the Brazilian Restructuring Law in order to preserve its value as a going concern and maximize the value of its assets for the benefit of all creditors.

23. The shareholders of SIFCO authorized the commencement of the Brazilian Proceeding, and on April 18, 2014, authorized the commencement of this Chapter 15 proceeding (the "Board Resolution"). SIFCO also empowered Rubens Leite to act as SIFCO's Foreign Representative, and empowered him to commence this Chapter 15 proceeding.

24. On April 22, 2014, SIFCO initiated the Brazilian Proceeding pursuant to the provisions of Brazilian Restructuring Law, the recuperacao judicial, Federal Law No. 11,101 of February 9, 2005, by submitting a voluntary petition to the Brazilian Court. Shortly thereafter, this case under Chapter 15 was commenced.

## Relief Requested

25. For the reasons set forth herein, the Foreign Representative respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit A: (i) recognizing the Brazilian Proceeding as "a foreign main proceeding" pursuant to 11 U.S.C. §§ 1517(a) and (b)(1) and providing the protections and benefits identified in Bankruptcy Code Section 1521; (ii) recognizing the Foreign Representative as the duly appointed "foreign representative," as defined in 11 U.S.C. § 101(24), of SIFCO; and (iii) to the extent necessary (*i.e.*, if the Brazilian Proceeding is found to be a foreign "nonmain" proceeding rather than a foreign "main" proceeding), granting relief under sections 1521(a)(1), (2), (3), (5) and (6) and 1521(b) of the Bankruptcy Code.

7

**Grounds For Relief Requested**

26. Chapter 15 of the Bankruptcy Code is designed to assist foreign representatives in protecting assets located in the United States that belong to a foreign debtor that has commenced insolvency proceedings in a foreign jurisdiction. *See* 11 U.S.C. § 1501(b). Among the purposes of Chapter 15 are: (i) to encourage cooperation between U.S. and foreign courts; (ii) to promote the fair and efficient administration of cross-border insolvencies that protect creditors, debtors, and other parties-in-interest; and (iii) to protect and maximize the value of the debtor's assets. Consistent with those principles, the Foreign Representative commenced this Chapter 15 proceeding to obtain recognition of the Brazilian Proceeding as a foreign "main" proceeding. The Foreign Representative believes that this Chapter 15 proceeding will complement SIFCO's primary proceedings in Brazil to ensure the effective and economic administration of SIFCO's restructuring efforts.

**I.    The Requirements For Recognition As A
       Foreign Main Proceeding Are Satisfied**

27. Section 1517(a) of the Bankruptcy Code provides that a court shall enter an order granting recognition of a foreign proceeding if:

> (i)    such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (ii)   the foreign representative applying for recognition is a person or body; and
>
> (iii)  the Petition meets the requirements of section 1515.

11 U.S.C. § 1517(a). Section 1517(b), in turn, provides that a foreign proceeding "shall be recognized . . . (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1). The Foreign Representative submits that all of the requirements for recognition of a foreign main proceeding are satisfied.

*i.    The Brazilian Proceeding is a "Foreign Proceeding"*

28.    As a threshold matter, the Brazilian Proceeding is a "foreign proceeding" as that term is defined in the Bankruptcy Code. Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

29.    The Brazilian Proceeding meets this definition because it is a collective administrative proceeding under the Brazilian Restructuring Law, administered in the Brazilian Court, which relates to insolvency and adjustment of debt. *See* Foreign Counsel Declaration. The purpose of the Brazilian Proceeding is to allow financially troubled businesses time to either craft and execute a plan of reorganization or go through an orderly liquidation of their assets. *See id.*

30.    The process is controlled by the Brazilian Court, which has authority at the outset to grant or deny the Brazilian petition and has review and approval rights over any plan of reorganization filed by the debtor.[1] *See id.* Moreover, under the Brazilian Restructuring Law, although SIFCO will remain in control of its business and operations, an administrator will be appointed to oversee those operations and SIFCO's restructuring proceedings. *See id.* The process of forming the plan of reorganization, too, is overseen by the court-appointed administrator.[2] *See id.* For these reasons, SIFCO's assets are and will continue to be "subject to

---

[1] The Chapter 15 Petition in this case was filed concurrently with the filing of the Brazilian petition. Once the Brazilian Court grants SIFCO's petition, SIFCO will file appropriate notices and will inform the Court as required pursuant to 11 U.S.C. §1518.

[2] In addition, a committee, which plays a role similar to that of a creditors committee in Chapter 11 practice, may be appointed.

9

control or supervision by a foreign court" through the Brazilian Proceeding, and all of the requirements of section 101(23) are met. *See id.* Indeed, bankruptcy courts have recognized proceedings under the Brazilian Restructuring Law as foreign proceedings under Chapter 15 of the Bankruptcy Code. *See*, *e.g.*, *Rede Energia S.A.*, Case No. 14-10078-SCC (Bankr. S.D.N.Y.); *Banco Santos S.A.*, Case No. 10-47543-LMI (Bankr. S.D. Fla.); *Independencia S.A.*, Case No. 09-10903-SMB (Bankr. S.D.N.Y.); *Varig, S.A.*, Case No. 05-14400-RDD (Bankr. S.D.N.Y.) (under 11 U.S.C. § 304 (repealed)).

### ii.    The Brazilian Proceeding Qualifies as a Foreign "Main" Proceeding

31.    Once it is determined that the Brazilian Proceeding is a foreign proceeding, the question becomes whether the foreign proceeding is entitled to recognition, and if so, whether as a foreign "main" or "nonmain" proceeding.

32.    Section 1502(5) defines a foreign "nonmain" proceeding as one which is pending in a country where the debtor has an "establishment," which in turn is defined in Section 1502(2) as "any place of operations where the debtor carries out a nontransitory economic activity." Section 1502(4), in turn, defines a foreign "main" proceeding as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). Thus, it must be shown that the Brazilian Proceeding is pending where the center of SIFCO's main interests are located in order for the Brazilian Proceeding to be considered a foreign "main" proceeding.

33.    Although the Bankruptcy Code does not provide a conclusive test to determine what constitutes a debtor's center of main interests, pursuant to section 1516 of the Bankruptcy Code it is presumed, absent evidence to the contrary, that the debtor's center of main interests is located where the debtor has its registered office. 11 U.S.C. § 1516(c). The concept of center of main interests has been equated by courts to the concept of a debtor's "principal place of business." *In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006).

34. There is no doubt that Brazil is where SIFCO's "center of main interests" is located.

35. SIFCO's registered office is located in Brazil. *See* Foreign Representative Declaration. Thus, the presumption put in place pursuant to section 1516 applies. In addition, Brazil is where SIFCO's manufacturing operations, employees, headquarters, and administrative staff are located. *See* Foreign Represenative Declaration. There can be no credible dispute regarding where SIFCO's center of main interests is located - *Brazil*.

    iii. <u>*The Foreign Representative Meets the Statutory Requirements*</u>

36. The second requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the "foreign representative applying for recognition be a person or body." *See* 11 U.S.C. § 1517(a)(2).

37. The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> [A] person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

38. Courts in this district have held that a foreign representative may be appointed by a debtor's board of directors, and need not be appointed by the foreign court overseeing the foreign proceeding.[3] *See, e.g., In re Bd. Of Dirs. of Hopewell*, 275 B.R. 699, 707 (S.D.N.Y.

---

[3] The definition of "foreign representative" was amended in 2005 as follows (italicized text representing additions, and stricken text representing deletions):

> *The term* "foreign representative" *means* ~~duly selected trustee, administrator, or other representative of an estate in a foreign proceeding~~ *a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.*

11

2002) (holding that company's board of directors qualified as foreign representative); *see also In re Bd. of Dirs. Of Telecom Argentina S.A.,* No. 05-17811 (BRL), 2006 WL 686867 at *21 (Bankr. S.D.N.Y. Feb. 24, 2006) (same); *In re Netia Holdings*, 277 B.R. 571, 587 n. 76 (Bankr. S.D.N.Y. 2002) (same). Indeed, neither section 101(24) nor Chapter 15 of the Bankruptcy Code requires foreign representatives to be appointed by foreign courts. *See In re Hopewell*, 275 BR. 699, 707 (S.D.N.Y. 2002) (interpreting prior version of section 101(24) of the Bankruptcy Code and stressing that "nothing in the statute requires a court appointment"). Section 101(24) simply requires that a foreign representative be "authorized" to administer the reorganization or the liquidation of the debtor's assets or affairs or act as a representative of the foreign proceeding. *See* 11 U.S.C. § 101(24).

39. Consistent with this reasoning, in *In re Corporacion Durango, S.A.B. de C.V.,* this Court recognized an officer of the debtor as a duly authorized foreign representative of the debtor within the meaning of sections 101(24) and 1515(a)(2) of the Bankruptcy Code. The foreign representative in *Corporacion Durango* was not appointed by the foreign court, but was instead appointed by the debtor's board of directors prior to the filing of its foreign proceeding. *See In re Corporacion Durango, S.A.B. de C.V.,* No. 08-13911 (RDD) (Bankr. S.D.N.Y. Dec. 11, 2008); *see also In re Vitro, S.A.B. de C.V.*, 479 B.R. 408, 411-12 (N.D. Tx. 2012) (citing *In re Compania Mexicana de Aviacion, S.A. de C.V.*, Case No. 10-14182(MG), 2010 WL 10063842 (Bankr. S.D.N.Y. Nov. 8, 2010) (recognition order)).

40. Rubens Leite is an individual who has been duly appointed by SIFCO's shareholders. *See* Foreign Representative Declaration. The requirements of sections 101(24) and 1517(a)(2) of the Bankruptcy Code have been met. Accordingly, Rubens Leite should be recognized by the Court as SIFCO's Foreign Representative.

---

*See* Lawrence P. King, 2 COLLIER ON BANKRUPTCY ¶ 101.24 (15th ed. revised 2009).

         *iv.*      *The Requirements of Bankruptcy Code Section 1515 Have Been Met*

41. The final requirement for recognition of a foreign main proceeding is compliance with the procedural and evidentiary requirements of section 1515 of the Bankruptcy Code. Section 1515 (i) requires that a petition be filed with the court and (ii) lists the documents and statements that must accompany the petition for recognition. *See* 11 U.S.C. § 1515. All of the requirements of section 1515 of the Bankruptcy Code have been met.

42. First, the Chapter 15 Petition in this case was properly filed by the Foreign Representative on behalf of SIFCO, as required by section 1515(a) of the Bankruptcy Code.

43. Second, documents evidencing: (i) the appointment of the Petitioner as foreign representative and (ii) the commencement and existence of the Brazilian Proceeding, in the form of the Shareholder Resolution and Brazilian petition, have been provided as Exhibits A and C, respectively, to the Foreign Representative Declaration, as required under section 1515(b). English translations of the Shareholder Resolution and Brazilian petition, as required by section 1515(d) of the Bankruptcy Code, are attached as Exhibits B and D to the Foreign Representative Declaration, respectively.

44. Finally, as is required by section 1515(c), the Foreign Representative Declaration includes a statement identifying the Brazilian Proceeding as the only foreign proceeding currently pending with respect to SIFCO. *See* Foreign Representative Declaration.

**II.**    **Recognition As Foreign Nonmain Proceeding**

45. In the event the Court finds that the Brazilian Proceeding is not entitled to foreign main proceeding status, SIFCO respectfully requests that foreign nonmain status be granted. SIFCO respectfully submits that based upon the evidence submitted by way of the Foreign Representative Declaration, SIFCO has ably demonstrated that it has a nontransitory economic presence in Brazil. *See* 11 U.S.C. §§ 1502; 1517.

46. To the extent the Court grants foreign nonmain status, SIFCO respectfully requests that the Court grant SIFCO the same relief, and to the same extent, sought by SIFCO on an interim basis in this Chapter 15 proceeding.

**Conclusion**

Based upon the foregoing, the Foreign Representative respectfully requests that the Court enter an order, if the Form annexed hereto as **Exhibit A,** finding that: (i) the Foreign Representative meets the statutory requirements of 11 U.S.C. §§ 101(24) and 1517(a)(2); and (ii) that the Brazilian Proceeding qualifies as a foreign main proceeding under the statutory requirements of 11 U.S.C. §§ 101(23), 1502(4) and 1516(c), and/or (iii) grant such other and further relief as is necessary and appropriate.

Dated: New York, New York
April 22, 2014

**DUANE MORRIS LLP**

 */s/William C. Heuer*
William C. Heuer, Esq.
1540 Broadway
New York, New York 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
William C. Heuer, Esq.
James J. Vincequerra, Esq.
*wheuer@duanemorris.com*
*jvincequerra@duanemorris.com*
*Counsel to the Foreign Representative*