Hearing Date: October 22, 2014 at 9:45 a.m. (EST)

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
J. Christopher Shore
Thomas E. MacWright

Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2352
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
John K. Cunningham
Richard S. Kebrdle (admission *pro hac vice* pending)

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SIFCO S.A.,<br><br>    Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 14-11179 (REG) |

**REPLY OF THE FOREIGN REPRESENTATIVE TO THE OBJECTION OF AD HOC
COMMITTEE OF CERTAIN SENIOR SECURED NOTEHOLDERS TO VERIFIED
PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING AND
<u>REQUEST FOR CHAPTER 15 RELIEF</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

REPLY .............................................................................................................................................4

   A.   The Foreign Representative's Alleged Involvement In The Westport Transactions Does Not Compel Denial Of Recognition ..................................................................................4

   B.   The Proposed Modifications And Additional Requests For Relief Have No Basis In Fact Or Applicable Law .........................................................................................................6

CONCLUSION .............................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

Adelphia Recovery Trust v. Bank of Am., N.A.,
    390 B.R. 80 (S.D.N.Y. 2008), aff'd, 379 F. App'x 10 (2d Cir. 2010) .......................................... 5

Awal Bank, BSC v. HSBC Bank USA (In re Awal Bank, BSC), 455 B.R. 73 (Bankr. S.D.N.Y.
    2011) .......................................................................................................................................... 9

In re Elpida Memory, Inc.,
    No. 12-10947, 2012 WL 6090194 (Bankr. D. Del. Nov. 20, 2012) ............................................ 6

In re Tri-Continental Exchange Ltd.,
    349 B.R. 627 (Bankr. E.D. Ca. 2006) .......................................................................................... 7

Official Comm. of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace &
    Co.),
    285 B.R. 148 (Bankr. D. Del. 2002) ........................................................................................... 9

## STATUTES AND RULES

11 U.S.C. § 101(24) ........................................................................................................................ 5

11 U.S.C. § 1104(c) ........................................................................................................................ 8

11 U.S.C. § 1515 ............................................................................................................................. 5

11 U.S.C. § 1517 ......................................................................................................................... 5, 4

11 U.S.C. § 1519 ............................................................................................................................. 8

11 U.S.C. § 1520 ......................................................................................................................... 4, 6

11 U.S.C. § 1520(a)(2) ................................................................................................................... 6

11 U.S.C. § 1520(a)(3) ................................................................................................................... 8

11 U.S.C. § 1521 ............................................................................................................................. 8

11 U.S.C. § 1521(a)(5) ................................................................................................................... 3

11 U.S.C. § 1521(a)(7) ............................................................................................................... 3, 9

11 U.S.C. § 1521(b) ........................................................................................................................ 8

11 U.S.C. §§ 1526 .......................................................................................................................... 3

NEWYORK 9356565

11 U.S.C. § 1526(a) ...........................................................................................................................8

11 U.S.C. § 1526(b) ...........................................................................................................................8

Mr. Rubens Leite (the "**Foreign Representative**"), through his undersigned counsel, files this reply (the "**Reply**") to the Objection of Ad Hoc Committee of Certain Senior Secured Noteholders to Verified Petition for Recognition of Foreign Main Proceeding and Request for Chapter 15 Relief [Docket No. 32] (the "**Objection**").[1]  In support of this Reply, the Foreign Representative respectfully states as follows:

## PRELIMINARY STATEMENT

1. Six months ago, the Foreign Representative filed his Verified Petition commencing this chapter 15 case for the above-captioned foreign debtor, Sifco S.A ("**Sifco**" or the "**Debtor**"). Sifco, a large Brazilian automotive axle manufacturer, is unquestionably a debtor in its own pending foreign main proceeding in Brazil. Similarly, the Foreign Representative, Mr. Leite, is unquestionably the duly appointed foreign representative of Sifco with authority to commence this chapter 15 case.

2. In sum, the Foreign Representative easily meets all the requirements for entry of an order granting recognition under section 1517 of the Bankruptcy Code and the relief requested in the Verified Petition should be granted. The only reason for the six-month delay in recognition is that Sifco has been engaged in informal discussions with the Ad Hoc Committee of Certain Senior Secured Noteholders (the "**Noteholders**").[2]  Those discussions have led to a series of agreed adjournments which were docketed and noticed out to Sifco's creditors. Despite having six months to prepare its opposition to the Verified Petition, the Noteholders waited until October 15, 2014 to file an Objection that only vaguely contests recognition with no factual support.[3]

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.
[2] The Foreign Representative and Noteholders agreed to the entry of a preliminary injunction order and to delay the recognition hearing [Docket No. 21] in an attempt to resolve the Noteholders' complaints consensually. Unfortunately, after six months of good faith negotiations, the parties could not reach a resolution.
[3] Indeed, the Noteholders never served any formal discovery requests on the Foreign Representative or the Debtor during the delay.

1

Moreover, without filing a motion seeking relief, the Noteholders seek extraordinary protections solely designed to benefit the Noteholders based upon a flawed interpretation of the facts and law.

3. To start, the Noteholders seek to restrict the Foreign Representative's authority in this case, apparently arguing that Mr. Leite should be de facto disqualified because of a perceived conflict of interest. This contention is incorrect as a matter of fact and law and should be rejected. As explained in Mr. Leite's Supplemental Declaration, the Foreign Representative was <u>not</u> involved in any way in the Westport Transactions. There is no conflict. But even if he were involved, no provision in chapter 15 requires that an individual should be disqualified as acting as a foreign representative solely because that person was involved in a transaction that might later be challenged or subject to avoidance.[4] Nor would the Noteholders suggested remedy – denial of recognition and dismissal of this case – make any sense under the circumstances. Not only would a dismissal expose the Debtor's U.S. assets to piecemeal attacks, but the automatic stay would be lifted and the Debtor's actions in respect of its U.S. assets would no longer be subject to Court supervision. In short, the status quo ante, which the Foreign Representative seeks to maintain to preserve value in aid of the Brazilian Proceeding, would be replaced with chaos that would be detrimental to all of the Debtor's stakeholders.

4. Next, the Noteholders seek to have one of the Debtor's primary assets in the U.S. entrusted to their Indenture Trustee, not the Foreign Representative. Such relief is extraordinary, as well as self-serving for the sole benefit of the Noteholders, and should be denied. The Noteholders' complaints regarding the security of the Debt Service Reserve Account are misplaced for a number of reasons. <u>First</u>, the Foreign Representative is not seeking access to those funds at this time. Such funds are cash collateral and remain held in an account with the Indenture Trustee. <u>Second</u>, upon recognition, section 363 of the Bankruptcy Code shall apply to any

---

[4] Nor would that be the result with respect to a debtor-in-possession in a chapter 11 case.

2

proposed use of the funds in that Debt Service Reserve Account by the Foreign Representative. Thus, the Foreign Representative can only access those funds with the consent of the Noteholders or by order of this Court after notice and a hearing. Consequently, the Noteholders' interests in the Debt Service Reserve Account are already adequately protected.

5. Finally, the Noteholders' request for the unprecedented appointment of a chapter 11-like examiner is simply not available in chapter 15. <u>First</u>, appointment of an examiner in chapter 15 is ***at the request of the foreign representative*** entrusting the administration or realization of all or parts of the debtor's assets in the U.S. <u>See</u> 11 U.S.C. § 1521(a)(5). If appointed, such examiner could also be authorized to facilitate cooperation and communication with the foreign court. <u>See</u> 11 U.S.C. §§ 1526; 1527. There is no authority in chapter 15 to displace the foreign representative with an examiner with expanded powers as in a chapter 11 case. <u>Second</u>, the alleged claims for examination by the noteholders in the Objection do not even belong to the Debtor or its stakeholders. Indeed, in alleging that "the Debtor siphoned off its most valuable U.S. asset" in the Westport Transactions, the Noteholders gloss over the key fact that the Debtor never owned the U.S. entity, Westport. Rather this entity was owned by Sifco Intercontinental, the Debtor's subsidiary, which made the transfer described in the Objection. So, if there are any such claims, they would belong to Sifco Intercontinental or its creditors – not the Debtor or the Noteholders.[5] <u>Third</u>, even if the Debtor had owned Westport, the Debtor is a Brazilian company that is subject to a Brazilian plenary bankruptcy case. Therefore, such claims (assuming there are any at all) should be pursued in the foreign main proceeding in Brazil – not by the Noteholders or an examiner in connection with the Debtor's ancillary chapter 15 case.[6]

---

[5] Sifco Intercontinental is not a debtor in the Brazilian Proceeding or any other insolvency proceeding. Nor did Sifco Intercontinental issue or guarantee any of the Notes. Therefore, the Noteholders are not even creditors of Sifco Intercontinental and would lack standing to commence an action challenging the transaction.

[6] In fact, chapter 5 avoidance actions cannot be asserted in a chapter 15 ancillary proceeding. <u>See</u> 11 U.S.C.

6.      For the reasons above and stated herein, the Objection should be overruled and the revised proposed order granting recognition should be entered.

## REPLY

7.      The Foreign Representative is seeking customary chapter 15 relief to protect its assets located in the United States, which include the Debt Service Reserve Account maintained by the Bank of New York Mellon and an exclusive supply agreement with a counterparty in the United States. To that end, the Foreign Representative requests only the relief that will be triggered automatically under section 1520 of the Bankruptcy Code upon recognition of the Brazilian Proceeding as a foreign main proceeding. To obtain such recognition, the Foreign Representative has demonstrated in the Verified Petition that each of the requirements of section 1517 of the Bankruptcy Code has been satisfied. The Noteholders have not disputed the satisfaction of any of these elements, and instead have made numerous allegations that are unsupported by law and fact and are not bases for denying recognition. Thus, the Court should grant the Foreign Representative's request for chapter 15 recognition of the Brazilian Proceeding.

      **A.**      **The Foreign Representative's Alleged Involvement In The Westport Transactions Does Not Compel Denial Of Recognition**

8.      The Noteholders' allegations regarding the Foreign Representative's involvement in the Westport Transactions and perceived conflicts are simply not true. As set forth in his Supplemental Declaration and as previously explained to counsel for the Noteholders, the Foreign Representative did not work for the Debtor at the time of the Westport Transactions, has no knowledge of the transactions and has never communicated or discussed such transactions with anyone (other than privileged communications with counsel in preparing his Supplemental Declaration). The Noteholders have provided no evidence to the contrary.

---

§ 1521(a)(7).

4

9. Even if these allegations had some factual support (they do not), the Foreign Representative's alleged role in the Westport Transactions should not prevent the Foreign Representative from obtaining recognition. The Noteholders' belief that "further inquiry into the sale . . . is clearly warranted in connection with the Foreign Representative's request for relief from this Court" is incorrect as a matter of law. (Objection ¶ 16). The Bankruptcy Code does not require that a foreign representative be disinterested; rather, it requires only that the foreign representative is a person or body who has been duly authorized to act as a foreign representative for a foreign proceeding involving a foreign debtor. 11 U.S.C. §§ 101(24); 1515; 1517. It is undisputed that the Foreign Representative satisfies those criteria and should be recognized as the foreign representative.

10. Further, the Objection appears to preview certain purported avoidance actions the Noteholders believe exist. Whether or not they exist is, however, irrelevant to recognition. Rather, any such actions (if any) should be raised in connection with the Brazilian Proceeding. Indeed, Brazilian law provides a framework for such claims that is not manifestly contrary to United States law, as the Noteholders knows. However, in the six months since this chapter 15 case was filed, the Noteholders have not substantively engaged in the Brazilian Proceeding and have not taken any action to pursue these challenges. One possible explanation for this is that the subject transfer was not even made by the Debtor or a debtor in any other insolvency proceeding. Nor are the Noteholders creditors of that transferor. Thus, the Noteholders would not even have standing challenge the Westport Transactions. See Adelphia Recovery Trust v. Bank of Am., N.A., 390 B.R. 80, 94 (S.D.N.Y. 2008), aff'd, 379 F. App'x 10 (2d Cir. 2010) ("[T]he Bankruptcy Code's avoidance provisions can only be asserted to benefit a creditor of the debtor in question."). In sum, such allegations do not support a denial of recognition.

**B.    The Proposed Modifications And Additional Requests For Relief Have No Basis In Fact Or Applicable Law**

11.    Tacitly accepting that recognition should be granted, the Noteholders propose three modifications to any proposed recognition order, all of which misunderstand the relief sought and/or have no basis in fact or applicable law.

12.    <u>First</u>, the Noteholders argue that the Court should strike provisions of the proposed order that purport to grant injunctive relief that differs materially from section 1520 of the Bankruptcy Code.  As a threshold matter, the Foreign Representative only seeks the relief automatically applicable under section 1520 upon recognition, and the proposed order is not intended to, nor can it reasonably be read to permit, additional injunctive relief.  Contrary to the Noteholders' assertion, the Foreign Representative is not requesting any discretionary relief under section 1521 of the Bankruptcy Code.  Indeed, the revised proposed order, which is attached hereto as <u>Exhibit A</u>, a version of which was previously shared with counsel, is clear on this point.[7]  <u>See</u> Proposed Order ¶ 5 ("Without prejudice to any future motion the Foreign Representative may file for relief under section 1521 of the Bankruptcy Code or any opposition that may be filed thereto, no relief is granted herein under section 1521 of the Bankruptcy Code.").

13.    <u>Second</u>, the Noteholders' concern regarding the Foreign Representative's ability to distribute funds held in the Debt Service Reserve Account is unfounded.  Importantly, upon recognition, section 363 of the Bankruptcy Code will apply.  11 U.S.C. § 1520(a)(2); <u>In re Elpida Memory, Inc.</u>, No. 12-10947 (CSS), 2012 WL 6090194, at *9 (Bankr. D. Del. Nov. 20, 2012).  Thus, as the funds in the Debt Service Reserve Account constitute cash collateral, neither the Foreign Representative nor the Debtor may use such funds without obtaining noteholder consent or providing the Noteholders with adequate protection and obtaining Court permission.  Thus, the

---

[7]    Also attached hereto as <u>Exhibit B</u> is a blackline against the original order proposed at the commencement of this case.

Noteholders' interest in the funds is adequately protected.  See In re Tri-Continental Exchange Ltd., 349 B.R. 627, 639 (Bankr. E.D. Ca. 2006) (denying secured creditor's request to impose additional conditions on cash in U.S. entrusted to foreign representatives for administration and realization purposes but not distribution purposes; finding that chapter 15 and section 363 impose sufficient protections to secured creditor).

14. Nor is the Foreign Representative requesting that the Court entrust the distribution of all or part of the Debtor's assets located in the United States to him under section 1521(b) of the Bankruptcy Code at this time.  Rather, there is an express provision in the revised proposed order that maintains the status quo.  See Proposed Order ¶ 3 ("The Foreign Representative shall not take any action to (1) move or convey any of the Debtor's assets in the U.S. without further order from the Court, or (2) access, withdraw, remove, or transfer any funds held in the Debt Service Reserve Account without further order from the Court.").  Further, the suggestion that the Foreign Representative may attempt to transfer the funds to Brazil where they will be used for the payment of claims in derogation of the Noteholders' priority is also misplaced.  The Objection misinterprets the Brazil Restructuring Law, citing the relative priorities that would apply were the Debtor subject to a bankruptcy liquidation in Brazil.  Here, the Debtor is subject to a judicial reorganization – a proceeding similar to a chapter 11 – in which those priorities of payment are not applicable.

15. Third, the Noteholders' request for the appointment of an examiner is without precedent.  Indeed, even assuming that such a request were appropriately made in an objection with five business days' notice, the Noteholders are unable to cite to one case where an examiner was ever proposed by creditors and approved by a court in a chapter 15 case.  And there is a good reason for this:  there is no legal basis under the Bankruptcy Code to do so.

16. The term examiner is used sparingly throughout chapter 15.  In contrast to chapter

11, chapter 15 does not include a section governing when appointment of an examiner is appropriate. Cf. 11 U.S.C. § 1104(c). A careful analysis of the references to an "examiner" in chapter 15 demonstrates that Congress intended an examiner only be appointed upon the request of a foreign representative. For instance, sections 1519, 1521(a) and 1521(b) all provide that "*upon the request of a foreign representative*," a court may entrust the debtor's United States assets to the foreign representative or another person, including an examiner. Where a foreign representative has not requested entrustment of the debtor's assets to an examiner, such provisions are not meant to apply.[8]

17.    The Noteholders' suggestion that section 1522(b) provides the basis for the appointment of an examiner is also incorrect. Section 1522(b) permits the Court to impose sufficient protections it deems appropriate on any additional relief granted to a foreign representative under section 1521 or on the Foreign Representative's operation of the business under section 1520(a)(3). As already made clear, the Foreign Representative has not sought any relief under section 1521. Nor is the Foreign Representative operating a business in the United States. Thus, section 1522(b) is inapplicable in this case. But, even if section 1522 did apply, that provision would not form an independent basis for appointing an examiner and certainly not one with the powers sought in the Objection. The "sufficient protection" and the "conditions [the court] considers appropriate" (Objection ¶¶ 23, 31) should be tailored to address the relief requested by the foreign representative under section 1521 (and 1520(a)(3) to the extent applicable). Here, the Foreign Representative has only requested that the status quo ante be maintained pending the conclusion of the Brazilian Proceeding, meaning that the funds in the Debt

---

[8] One reason that Congress likely did not permit the appointment of an examiner, except at the request of the foreign representative, is that creditors would inevitably seek to use such a request to obtain leverage against the debtor in its foreign proceeding by imposing the substantial cost of an examiner on the debtor, de-centralizing the foreign proceeding, and imposing onerous discovery and investigation processes on foreign debtors operating under fair but different restructuring regimes.

8

Service Reserve Account remain in place and rights under the Westport Supply Agreement remain unaffected. The Noteholders, however, request an examiner with the rights and powers of a chapter 11 trustee, including standing to prosecute lawsuits on behalf of the estate.[9] As recognition exposes the Noteholders to minimal risks, if any, the appointment of an examiner with the effective powers of a chapter 11 trustee cannot possibly be appropriate or necessary under section 1522.[10]

18. In any event, appointment of an examiner to investigate the transactions the Noteholders complain about would essentially be futile. As already stated, these alleged claims – to the extent they even exist and can be asserted by the Noteholders or their representative – should be brought in Brazil and not in this case. Further, avoidance actions cannot even be asserted in an ancillary chapter 15 case. See 11 U.S.C. § 1521(a)(7) ("Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including– . . . granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).") (emphasis added); Awal Bank, BSC v. HSBC Bank USA (In re Awal Bank, BSC),

---

[9] A bankruptcy examiner's authority is generally limited to investigation of the debtor's conduct. See Official Comm. of Asbestos Personal Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.), 285 B.R. 148, 156 (Bankr. D. Del. 2002) ("As the title suggests, the basic job of an examiner is to examine, not to act as a protagonist in the proceedings. . . . Obviously an examiner does not displace the debtor in possession, and an examiner is not the representative of the estate under the Code.").

[10] Nor does section 1526 of the Bankruptcy Code provide the basis for the appointment of an examiner. Section 1526(a) provides that "consistent with section 1501, the trustee or another person, including an examiner, authorized by the court, shall, subject to the supervision of the court, cooperate to the maximum extent possible with a foreign court or a foreign representative." 11 U.S.C. § 1526(a) (emphasis added). This section does not authorize the appointment of an examiner, particularly in the absence of a foreign representative's consent as it requires cooperation to the maximum extent possible with the foreign representative. Section 1526(b) similarly provides that "the trustee or other person, including an examiner, authorized by the court is entitled, subject to the supervision of the court, to communicate directly with a foreign court or a foreign representative." 11 U.S.C. § 1526(b) (emphasis added). This section should also not be interpreted to authorize the appointment of an examiner; rather, it clarifies that an authorized person may contact the foreign representative or foreign court directly so long as the court is supervising such person.

9

455 B.R. 73, 80 (Bankr. S.D.N.Y. 2011) (noting that "the court cannot authorize a foreign representative, in a chapter 15 ancillary proceeding, to exercise the power to bring certain avoidance actions under the U.S. Bankruptcy Code"). Thus, were an examiner appointed, it is unclear what role it would even serve in this ancillary chapter 15 case.

## CONCLUSION

For the foregoing reasons, the Foreign Representative respectfully requests that this Court overrule the Objection, grant the Verified Petition and grant such further relief as it deems just and proper.

Dated: New York, New York
October 17, 2014

WHITE & CASE LLP

 /s/ J. Christopher Shore
J. Christopher Shore
Thomas E. MacWright
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

John K. Cunningham
Richard S. Kebrdle (admission *pro hac vice* pending)
Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2352
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

*Counsel to the Foreign Representative*

NEWYORK 9356565