1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF NEW YORK
2
   IN RE:                        .   Case No. 14-11179-reg
3                                .   Chapter 15
   SIFCO, S.A.,                  .
4                                .   One Bowling Green
                      Debtor.    .   New York, New York  10004
5                                .
                                 .   October 22, 2014
6  . . . . . . . . . . . . . . . .   11:19 a.m.

7
     TRANSCRIPT OF HEARING ON VERIFIED PETITION FOR RECOGNITION OF
8     FOREIGN MAIN PROCEEDING AND REQUEST FOR CHAPTER 15 RELIEF;
      OBKECTION OF AD HOC COMMITTEE OF SENIOR SECURED NOTEHOLDERS
9        TO VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN
       PROCEEDING AND REQUEST FOR CHAPTER 15 RELIEF; BEFORE THE
10    HONORABLE ROBERT E. GERBER, UNITED STATES BANKRUPTCY JUDGE

11

12  APPEARANCES:

13  For the Ad Hoc Committee      Pepper Hamilton, LLP
    of Bond Holders:              By:  David M. Fournier, Esq.
14                                1313 Market Street, Suite 5100
                                  Wilmington, Delaware  19899
15                                (302) 777-6500

16                                Pepper Hamilton, LLP
                                  By:  Ronald R. Jewell, Esq.
17                                620 Eighth Avenue, 37th Floor
                                  New York, New York  10018
18                                (212) 808-2700

19  For Foreign Representative:   White & Case, LLP
                                  By:  J. Christopher Shore, Esq.
20                                By:  Thomas E. MacWright, Esq.
                                  1155 Avenue of the Americas
21                                New York, New York  19936
                                  (212) 819-8394

22

23

24

25



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

```
 1   Appearances continued:

 2   For Bank of New York-          Emmet, Marvin & Martin, LLP
     Mellon:                       By:  Thomas A. Pitta, Esq.
 3                                 120 Broadway, 32nd Floor
                                   New York, New York  10271
 4                                 (212) 238-3148

 5   Audio Operator:               Michelle Brown

 6   Transcription Service:        Esquire
                                   1384 Broadway, 19th Floor
 7                                 New York, New York 10018
                                   (212) 687-8010
 8
     Proceedings recorded by electronic sound recording;
 9   transcript produced by transcription service.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

```
 1                    (Time Noted:  11:19 a.m.)

 2           THE COURT:  Good morning.  Have your seats,

 3  please.

 4           Okay, we're here on SIFCO.  I know Mr. Shore, I

 5  know Mr. Fournier.  I don't know your colleagues.

 6           Can you introduce yourselves if you think you're

 7  going to be heard, please?

 8           MR. FOURNIER:  Good morning, Your Honor, David

 9  Fournier on behalf of the Ad Hoc Committee of Certain

10  Noteholders.

11           Your Honor, with me is my colleague, Ron Jewell

12  from our New York office.

13           THE COURT:  Was that Dewell?

14           MR. FOURNIER:  Jewell, Your Honor.

15           THE COURT:  Oh, Jewell.  Oh, right, of course, I'm

16  sorry.

17           MR. PITTA:  Good morning, Your Honor, Thomas

18  Pitta, of Emmet, Marvin & Martin, on behalf of the Bank of

19  New York-Mellon, as Trustee.

20           THE COURT:  Oh, okay.

21           MR. SHORE:  And then Chris Shore, Your Honor, on

22  behalf of the Foreign Representative.  And with me is Tom

23  MacWright.

24           THE COURT:  Okay, thank you.  Gentlemen, I have a

25  number of tentatives, California style.
```



**2700 Centennial Tower**
**101 Marietta Street**
**Atlanta, GA 30303**

**Toll Free: 800.211.DEPO**
**www.esquiresolutions.com**

1           Those tentatives being to recognize the Foreign

2   Representative, grant recognition under Chapter 15, and to do

3   nothing further at this time to delay the matter of

4   entrusting pending a clarification of the situation in Brazil

5   and clarification of what the insiders are accused of doing;

6   to deny, at least without prejudice, any request for an

7   examiner; and to keep that money locked up pending

8   clarification of the situation and/or further information

9   from the Brazilian Court.

10          And I'll hear from each of you as to why my

11  tentative is wrong.  I'll hear first from you, Mr. Shore.

12          MR. SHORE:  Thank you, Your Honor.  In addition to

13  your tentatives, I apologize for not being on the call the

14  other day.  I had a witness on the stand in Delaware, but I

15  heard loud and clear as to what we're supposed to be doing

16  today.

17          With respect to the motion for recognition, I

18  don't disagree with what Your Honor said at all.  What I

19  would like to do is move into evidence all of the stuff that

20  supports the 1520 motion that's before Your Honor, walk Your

21  Honor through some changes we've made to the proposed order

22  which addresses the 1520 issues, and then speak a little bit

23  about the relief that is requested and how we see the events

24  playing out over the next couple of months.

25          THE COURT:  All right.  Well, the form of the



1   order is one that's probably best addressed after I determine

2   what the substance of my ruling is, vis-à-vis you're making

3   the showing -- do I have my usual case management order in

4   place in this case?

5             MR. SHORE:  I don't believe it is.

6             THE COURT:  Your colleague says it is.

7             MR. SHORE:  Oh, it is?  It is?  All right.

8             THE COURT:  Okay, so then everything that you said

9   that wasn't disputed is already taken as true.

10            If you want to take the eight seconds to move it

11  into evidence, I'm not going to put a sock in your mouth, but

12  the whole purpose of the case management order is to obviate

13  the need to do stuff like that.

14            I do want to hear from you as to whether you think

15  I should be doing any more than I'm inclined to do today, and

16  then, of course, I want to get Mr. Fournier's perspective.

17            MR. SHORE:  No, with Your Honor's clarification,

18  we've set forth what we'd like to move into evidence.  It's

19  uncontested, so we can move forward on that.

20            The relief -- the additional relief that's

21  requested, this is how we see it happening.

22            With a recognition order in place, we've got a

23  stop on everything, and including -- we'll give you an order

24  later that makes very clear that the money that is in the

25  United States is going to be stopped.  There isn't going to



1   be any movement of that money, 363 is going to apply, the

2   Second Circuit has just made that clear that 363 is going to

3   apply.

4          So, it will be here, it will be under wraps, and

5   then it will be subject to either a motion to lift stay to

6   seek access to the funds, or some other relief at a later

7   date, but that's not a motion that's in front of the Court.

8          In any event, you can't entrust it to anybody

9   without addressing the Brazilian Court, as well, because

10  you're going to have a stay that applies there.

11         So, I think just where we are procedurally on

12  moving the money over, I think that's exactly right.  It's --

13  we will make very clear that it is in the account, it will

14  not be moved subject to further disposition of the Court.

15         With respect to the examiner relief, here's the

16  big problem.  You know, the assumption here is that, one,

17  that the Foreign Representative is somehow compromised.  We

18  submitted a declaration, which is in evidence, that the

19  Foreign Representative had no involvement in any of the

20  transactions and has no personal knowledge of any of the

21  transactions they're complaining about.

22         Mr. Leite is here to answer any questions with

23  respect to that, but that's not in dispute.

24         In addition, the claims they are talking about

25  that they want an examiner for, concern allegations of



1  movements between a non-debtor Bahamian corporation and a

2  non-debtor Brazilian corporation that are not property within

3  the United States.  They are claims, if they exist, with

4  respect to property of a Brazilian debtor.

5          And, as Mr. de Andrade sets out in his

6  declaration, which is in evidence, at paragraphs 28 to 30,

7  creditors in Brazil have the right to pursue the fraudulent

8  conveyance claims there, to seek judicial assistance with

9  respect to that, to seek discovery with respect to that, and,

10 in fact, the bondholders this week in Brazil filed a motion

11 seeking access to documents in Brazil to address those

12 issues.  So that's one set of issues.

13          Is this even the right place to be addressing

14 those claims?  In our view, those claims are -- have to be

15 and should be and will be addressed in Brazil subject to

16 Brazilian law.

17          THE COURT:  And, of course, there are limitations

18 on the ability to bring Chapter 5 avoidance actions in the

19 U.S. in a Chapter 15 case.

20          MR. SHORE:  That's correct.  And then, in

21 addition, beyond the this is really a Brazilian issue, we

22 just don't see any Statutory predicate for the Court to be

23 ordering an examiner.  The examiner comes up in the context

24 of 1521, which is at the request of the Foreign

25 Representative.



1          The Foreign Representative is not making a request

2    for an examiner, so I just -- we haven't heard what their

3    response is.  I'm sure we'll hear a response this morning.

4          But, in any event, I don't see the predicate for

5    that.

6          And then even if there were an examiner to be

7    appointed to examine Brazilian law claims for transactions

8    there, there is no predicate at all for an examiner of what

9    they want, which is an examiner with the power to bring

10   claims and causes of action that would otherwise belong to a

11   debtor or creditors.  There's just nothing even in 11 that

12   would -- that describes what that preacher is.

13         So, in short, I think Your Honor's preliminary

14   views of this are absolutely correct.  I'd like to hear from

15   the other side and respond to that, if I could, with respect

16   to any of the issues related to either the claims or the

17   relief they're seeking in respect to the claims they think

18   exist.

19         THE COURT:  Okay.  Now I'm going to hear from you,

20   Mr. Fornier, and give you a chance to reply, Mr. Shore, and

21   you a chance to sur-reply, Mr. Fournier.  In each case, when

22   you're up the second time, limited to what the other guy said

23   the first time.

24         MR. FOURNIER:  No problem.

25         THE COURT:  So, can I get your perspective,



1   please, Mr. Fornier?

2              MR. FOURNIER:  Good morning, Your Honor.  For the

3   record, David Fournier on behalf of the Ad Hoc Committee of

4   Certain Noteholders.

5              Your Honor, I appreciate the Court's tentative on

6   that.  It is helpful to certainly guide the discussion.

7              A couple of things, Your Honor.

8              First, with respect to 1517 recognition, I think

9   at this stage we certainly are not going to challenge

10  recognition itself, Your Honor.  I think what we do believe

11  is appropriately before the Court in connection with

12  recognition, however, is what additional relief or

13  limitations on the relief granted might properly be imposed.

14             Your Honor, given the changes to the proposed form

15  of order that had been made, we certainly are comfortable

16  with the funds that are currently being held by Bank of New

17  York remaining where they are, and subject to further motion

18  by, you know, a party-in-interest with respect to what's

19  going to happen with those funds.  So I don't think that

20  needs to be addressed in connection with recognition here.

21             Your Honor, the issues we've raised with respect

22  to the Foreign Representative, a declaration has been filed

23  that states that the Foreign Representative was not involved

24  in the transactions; at least the Westport I transaction,

25  which is the only transaction they specifically referenced in



1 the declaration.

2          Your Honor, for purposes of this hearing, we

3 recognize or accept that the Court could properly determine

4 that they are an authorized Foreign Representative for

5 purposes of recognition today.

6          However, Your Honor, as noted, we have moved in

7 Brazil to bring these same issues to the attention of the

8 Court.  If the Brazilian Court should enter a ruling that

9 bears on who the proper Foreign Representative is for

10 purposes of this proceeding, then certainly we would want the

11 ability to come back before the Court with respect to whether

12 this particular individual should properly continue as the

13 recognized Foreign Representative.

14          THE COURT:  Pause, please, Mr. Fournier.  I

15 haven't addressed this issue personally in any of the 15s on

16 my watch yet, but I had always assumed that 15 permits the

17 flexibility for the U.S. Court to respond to any material

18 developments in the foreign court.  Am I correct?

19          MR. FOURNIER:  Your Honor, I read Chapter 15 the

20 same way.  I believe the Court does have that discretion, and

21 I just want that to be clear so that there's no argument down

22 the road that we -- that a party-in-interest couldn't appear

23 other than the Foreign Representative himself for purposes of

24 amending the Court's recognition of who the individual is who

25 would serve as the Foreign Representative.



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1          THE COURT:  So, would I need to do anything other

2    than just give you a reservation of rights to bring to my

3    attention later any rights that you have under U.S. law 15,

4    or otherwise, --

5          MR. FOURNIER:  Your Honor, --

6          THE COURT:  -- of pending developments in Brazil?

7          MR. FOURNIER:  With respect to that issue, Your

8    Honor, I think that's sufficient.

9          THE COURT:  Seems pretty easy, doesn't it?

10          MR. FOURNIER:  With respect to this sort of -- the

11    issue, if you will, the issue of an examiner.

12          Your Honor, another couple of things.

13          In the pleadings that have been filed, the Foreign

14    Representative has not challenged the description of the

15    Westport I and Westport II transactions that we lay out in

16    some detail in our objection.

17          In fact, at paragraph 5 of their own response,

18    they acknowledge that SIFCO Intercontinental --

19          THE COURT:  Do you mean their reply, Mr. Fournier?

20          MR. FOURNIER:  I'm sorry, their reply, Your Honor.

21          THE COURT:  Page 5, did you say?

22          MR. FOURNIER:  Paragraph 5.

23          THE COURT:  Oh, paragraph 5.  Go on, please.

24          MR. FOURNIER:  Of their reply, they acknowledge

25    that SIFCO Intercontinental, the wholly-owned subsidiary of



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1   SIFCO, was, in fact, the entity that transferred the assets.

2   So they haven't challenged, for purposes of this hearing,

3   that recitation.

4            In fact, Your Honor, pursuant to the Court's case

5   management order, for purposes of this hearing, those facts

6   are deemed admitted.

7            Your Honor, I would submit that where a debtor

8   comes into this Court requesting recognition for the purpose,

9   ostensibly of protecting two categories of assets, an eight

10  and a half million dollar roughly fund being held by Bank of

11  New York, and some undefined contract rights related to

12  Westport, the Court can properly take notice of the fact, or

13  the allegation, actually a deemed admitted fact at this

14  point, that in the months leading up to the bankruptcy, the

15  principal U.S. asset of that foreign company was transferred

16  out to insiders.

17           Your Honor, I don't think it's at all

18  inappropriate for the Court to recognize that, to deal with

19  that in the context of recognition.

20           Your Honor, the Foreign Representative --

21           THE COURT:  Pause, please, Mr. Fournier.  Would

22  the most appropriate thing for me to do, since we're not

23  going to have a full fraudulent conveyance trial today, nor

24  would it be practical to have one later, at least until the

25  ability to examine fraudulent conveyance issues in the U.S.



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1   and the 15 is clarified, is to assume, for the purpose of any

2   ruling that your guys have allegations to that effect, maybe

3   even that they're asserted in good faith, without making any

4   findings as to the truth or falsity of the underlying

5   allegations?

6           MR. FOURNIER:  Your Honor, I think the Court can

7   certainly assume the facts that have been alleged, because

8   those facts are not contested here.

9           With respect -- we're not asking the Court for

10  permission --

11          THE COURT:  Pause, please.  Is it agreed by both

12  sides that the assets are gone, and that they came from what

13  would have otherwise been a debtor entity?

14          MR. FOURNIER:  No, Your Honor.  The allegations in

15  the pleadings are not contested that it was a wholly-owned

16  subsidiary of SIFCO, S.A. that transferred its interest in

17  its wholly-owned subsidiary, Westport.

18          THE COURT:  Okay.  Continue, please.

19          MR. FOURNIER:  All right.  Your Honor, we are not

20  before the Court today asking for authority to bring a

21  fraudulent transfer action.  In fact, there may well be

22  additional causes of action that arise from that transaction

23  beyond fraudulent transfer claims.  Breach of fiduciary duty

24  is one that comes immediately to mind.

25          Your Honor, the question in my mind is really



1   three-fold, I suppose.

2          The Foreign Representative says that you can't

3   pursue these claims because SIFCO Intercontinental, the

4   entity that transferred the assets, is not a debtor of the

5   complaining creditors, and the Foreign Representative says

6   that this Court has no authority to order an examination of

7   those transactions.

8          THE COURT:  Well, I think what he said is I don't

9   have the authority to order the appointment of an examiner.

10  A separate issue is the extent -- and I don't think it's

11  before me today, to which I can authorize discovery relevant

12  to those concerns.

13         MR. FOURNIER:  Okay.  So, Your Honor, yeah, what

14  the Foreign Representative is saying, basically, is okay, we

15  haven't challenged the facts asserted with respect to those

16  transactions, but really to bag creditors because there's

17  nothing you can do about it.  In essence, that's what they're

18  saying.

19         Or, in the alternative, they're saying go to

20  Brazil and asset these in the Brazilian proceeding.

21         THE COURT:  Well, I think the latter formulation

22  that you had is a little closer to what Mr. Shore was saying,

23  isn't it?  He's saying that your remedy is in Brazil.

24         We haven't talked, or if it was in the papers, I

25  missed it, about the organization -- the jurisdiction of



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1  organization of the entity that transferred the assets.  But

2  if Brazilian law were the same as U.S. law, normally the

3  jurisdiction of incorporation applies to the breach or non-

4  breach of fiduciary duties by officers and directors.

5          And aiding and abetting law gets more complicated.

6  That's usually where the injury was suffered, at least I've

7  ruled that in the Adelphia Bank of America case.

8          But, I don't see those matters as being relevant

9  to what I have now, and if assuming, without deciding,

10  Brazilian law would be open to looking at whether officers

11  and directors did bad things, and if assuming that they did

12  there are remedies there, do you think it's offensive for me

13  to say the Brazilian Courts can do their thing and then I'll

14  examine it within the confines of 15 or other U.S. comity law

15  after they rule?

16          MR. FOURNIER:  Your Honor, I don't think that

17  would be offensive.  I think that it assumes something, at

18  least with respect to the fraudulent transfer claims, if

19  those are what are brought, that may not be correct, which is

20  that those claims would be brought in the Brazilian

21  proceeding.

22          Your Honor, the Foreign Representative's own

23  declaration notes that while fraudulent transfer claims may

24  exist under Brazilian law, they would be brought in the civil

25  courts, not in the Brazilian proceeding itself.



1          So, Your Honor, I'm not sure that there would be

2    an order of the Brazilian Court in the restructuring

3    proceedings that would be brought before the Court with

4    respect to that for recognition.  That's the nuance on that

5    that I would note, Your Honor.

6          Beyond that, however, I would say that given that

7    the interests in this subsidiary was the principal U.S. asset

8    of this Chapter 15 debtor in the months leading up to the

9    case before the transfer occurred, it certainly wouldn't be

10   offensive for the Court to say, you know, an examination of

11   that transaction is appropriate.

12         THE COURT:  An examination how?  By appointment of

13   an examiner, when the Code seems to contemplate examiners

14   being appointed by one means, but not alternative means?

15         MR. FOURNIER:  Your Honor, let me address that.

16   The Code --

17         THE COURT:  Because normally examiners are

18   appointed under, what is it, 1104 or 1107?  I've forgotten

19   the exact section.  Yeah, 1104.

20         MR. FOURNIER:  1104.

21         THE COURT:  But that's a Chapter 11 provision

22   rather than a Chapter 15 provision.

23         MR. FOURNIER:  It is, Your Honor.  And this Debtor

24   came to the Court, although they say now that they're not

25   requesting relief pursuant to 1521, they came to Court asking



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1   for relief pursuant to 1521(a)(5).  That was included in

2   their proposed form of order with the original Petition.

3          They still include in the proposed order to the

4   Court what effectively is 1521(a)(5) relief, in asking that

5   the Foreign Representative be entrusted with administration

6   of the Debtor's U.S. assets.

7          So, Your Honor, if you look at 1521, there clearly

8   is an issue with respect to the introductory language in that

9   section, which reads "at the request of the foreign

10  representative."

11         However, Your Honor, I don't think that the

12  Court's hands are tied under that section.  If you look at

13  1521(a)(5), I think a fair reading of that is as fair as the

14  reading that the Foreign Representative proffers, is that if

15  the Foreign Representative comes to the Court and says to

16  Your Honor "we want you to entrust the assets in the United

17  States to us," that it is within the bounds of the Court to

18  say "I'm going to entrust them to an examiner instead.  I'm

19  going to appoint an examiner."

20         Moreover, Your Honor, under 1522, the Court

21  clearly has the ability, when the Foreign Representative

22  comes to the U.S. and requests relief under 1521, to say "I'm

23  going to impose whatever limitations or additional

24  requirements I deem appropriate in light of what the Foreign

25  Representative is coming into the U.S. and asking to do."



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1           Here, the Foreign Representative is asking to be

2     entrusted with administration of all U.S. assets, presumably

3     including whatever causes of action exist in the United

4     States.

5           And, Your Honor, where they have done that, I do

6     think the Court has the ability under 1521 and 1522 to say

7     with respect to that limited category, the issue of what

8     causes of action exist in the United States, I'm going to

9     appoint an examiner to look into those, given what are fairly

10    serious allegations.

11          And, Your Honor, those allegations are made in

12    good faith.  It's a serious quantity of money that, in our

13    view, appears to have been funneled out to insiders in the

14    months leading up to the commencement of this case.

15          THE COURT:  Okay.  Any further thoughts?

16          MR. FOURNIER:  Nothing further, Your Honor.

17          THE COURT:  Mr. Shore, reply, please?

18          MR. SHORE:  Just very shortly, three points, Your

19    Honor.

20          First, just to be clear, because allegations have

21    been made, the asset they're talking about, which is the

22    stock in the U.S. company, was never an asset of the Debtor.

23    It was a asset of a subsidiary of the Debtor, which is a

24    Bahamian corporation.

25          So, it was -- the stock they're talking about that



1  was sold was never a U.S. asset of this Debtor.  And to the

2  extent their request for an examiner is premised on that

3  fact, I don't think they dispute that fact.

4          Two, it's fair to say that they have asserted

5  claims in good faith.  It's also fair to say that the Foreign

6  Representative believes that the Debtors would have

7  significant defenses to any of the claims that are brought up

8  that this was a fraudulent conveyance both procedural and

9  substantive, running all the way from the gambit that on

10 standing defenses down to that there was an exchange for fail

11 value at the time given.

12         Three, with respect to the -- this issue of

13 seeking relief under 1520, there is no -- nothing in the

14 order which gives any relief to the Foreign Representative

15 under 1520.  In fact, under -- or 1521.  In fact, the order

16 that we've revised makes very clear that no relief is being

17 sought.

18         THE COURT:  Including entrusting under 1521(a)(5)?

19         MR. SHORE:  It doesn't make specific reference to

20 that, but it says without prejudice -- our new paragraph 5.

21         And, if I may approach, Your Honor, maybe this is

22 the time to give you a copy of the black line and clean of

23 the order.

24         THE COURT:  Sure, as long as Mr. Fournier has one

25 also.



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1          MR. SHORE:  They have.

2      (Brief pause)

3          MR. SHORE:  And what I was referring to in the

4  black line as new paragraph 5, which is without prejudice to

5  any future motion the Foreign Representative may file for

6  relief under Section 1521 of the Code, or any opposition that

7  may be filed, to no relief is granted herein under Section

8  1521 of the Bankruptcy Code.

9          And I want to talk just a little bit about where

10  we see things going.

11          Obviously, there are going to be a lot of

12  development and people are going to have whatever

13  reservations of rights.  But it's our intent to allow the

14  proceeding to go forward in Brazil, to do what we're supposed

15  to be doing, which is advising the Court of any material

16  developments that are going on in that Court.  If you want us

17  to take on the responsibility of advising the Court down

18  there, we have no problem with that.

19          And the next event would be if and when a plan

20  gets confirmed, we come back to the Court seeking additional

21  assistance under 1521 to effectuate what we would normally do

22  in a 15, which is an extension of the automatic stay and a

23  recognition of the discharge provisions, and whatever other

24  relief needs to be done in the U.S. with respect to the U.S.

25  assets, and have all of these issues raised at that point,



1   whether they want to bring them under 1506 or 1507 or 1522.

2   All of their rights are reserved to challenge it at that

3   point.

4           But what we need now is an order of recognition

5   that just kind of puts this case on its proper procedural

6   footing.

7           THE COURT:  Okay.  Mr. Fournier, any sur-reply?

8           MR. FOURNIER:  Your Honor, I'll limit my sur-reply

9   to the comment made with respect to the order.

10          Your Honor, if you look at the proposed form of

11  order that's been handed up, the line above paragraph 5 at

12  the end of paragraph 4, the Foreign Representative is

13  established as a representative of the Debtor with full

14  authority to administer the Debtor's assets and affairs in

15  the United States.

16          Your Honor, the only section of 15 -- of Chapter

17  15 that provides for the administration of the Debtor's

18  assets in the United States is 1521(a)(5).  So they can

19  strike the specific reference to being granted authority

20  under 1521, but in purporting to grant authority, the

21  authority that's listed in paragraph 4, they are, in effect,

22  doing that.

23          THE COURT:  Pause, please, Mr. Fournier.  Would

24  your concerns be addressed if paragraph 4 were modified to

25  read:  "The Foreign Representative is hereby established as



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1   the representative of the Debtor in the United States,"

2   leaving to applicable law and any limitations otherwise in

3   the order the issues of further authority?

4           MR. FOURNIER:   In light of Your Honor's prior

5   comments, that would.

6           THE COURT:   Okay.   All right.   Do you have further

7   thoughts, Mr. Fournier?

8           MR. FOURNIER:   No, Your Honor.

9           THE COURT:   Mr. Shore, if I were to take out the

10  words "with full authority to administer the Debtor's assets

11  and affairs," with reservations of rights for you to argue

12  later what the interplay between paragraph 5, 1521 as it

13  otherwise exists, 1520, would you have any concerns about

14  that being consistent with my ruling?

15          MR. SHORE:   Not at all, Your Honor.

16          THE COURT:   All right.   Does anybody have any

17  desire to be heard on anything further?

18          Okay.   Then, folks, this is what we're going to

19  do.   Recognition will be granted.

20          I don't see a need to go through the three

21  components of the showing that needs to be made incident to

22  recognition.

23          Mr. Shore, I'm going to ask you to submit to me a

24  revised order, or if the idea is to just go with this order,

25  as I just suggested a modification to it.   You don't even



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1  need to do that.

2          With one or two exceptions, which is why I still

3  want you to prepare a new one.

4          I want the various reservations of rights papered

5  in the order and expressed in baby talk, expressed

6  unambiguously.  Reservations of rights that Mr. Fournier is

7  likely to have, and that you might have.

8          The substance of my order is (a) recognition is

9  granted; (b) I am not, at this time, if I ever will,

10 directing the appointment of an examiner; (c) I intent to

11 continue to maintain the protection of the assets in the U.S.

12 and the freeze on any access to the money or any other

13 matters that require the approval of the Court to exercise

14 control or to dispose of them.

15         And the idea, folks, is to grant recognition, give

16 you guys all reservations of rights going forward, but to do

17 no more than to protect the assets -- the U.S. assets of the

18 Debtor, and to minimize the extent, at least at this point,

19 of interference with the Brazilian Court.

20         The basis for the exercise of my discretion on the

21 discretionary portions are obvious.

22         I don't feel like I have enough information yet,

23 if I ever will, on the matters underlying Mr. Fournier's

24 concerns.  I certainly do not want to suggest that I don't

25 care about fraudulent conveyances.  If there really are



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1   fraudulent conveyances, you bet your bippy I care about them.

2          And I don't want to impair the rights of the

3   bondholders to explore the transactions and to avail

4   themselves of any judicial remedies, if and when they are

5   otherwise appropriate.

6          The problem is the limited powers that I'm giving

7   under 15, principally to protect assets in the U.S. and to do

8   things that are appropriately done in the U.S., and to

9   minimize interference with proceedings in foreign

10  jurisdictions, at least to the extent that those foreign

11  jurisdictions act reasonably consistently or without

12  materially violating U.S. law.

13         We know from the Circuit's decision in TRICO that

14  if, by way of example, a jurisdiction were to step on the

15  rights of secured creditors and put admin claimants ahead of

16  secured creditors, matters of that character might be a

17  matter of concern to a U.S. Court.  But we're not there yet,

18  if we ever will be.

19         And I'm going to be taking this case one step at a

20  time.  Even in 11s, except where I'm bound by Statute to do

21  otherwise, I am not always convinced that examiners are the

22  best way to find facts.  Sometimes depositions and document

23  demands are, and this ruling is without prejudice to the

24  rights of anybody to get discovery in Brazil or in the U.S.,

25  to the extent it's otherwise appropriate.



1          But for now, I'm granting recognition.   No more

2    than that, except insofar as you may regard protecting the

3    assets in the U.S. as more than that.

4          And giving you guys full reservations of rights

5    for anything down the road in either Brazil or the U.S.

6          Okay, not by way of reargument, do we have any

7    open matters, Mr. Shore?

8          MR. SHORE:   Not at all, Your Honor.   We'll

9    negotiate the terms of the order consistent with what you've

10   just read, and we'll email it down to Chambers, if that's

11   acceptable.

12         THE COURT:   Yes.   I'm glad you said that, Mr.

13   Shore.   What I want you to do, if you would, I know both of

14   you guys and your firms, and I've known them both for a long

15   time.

16         I want you and Mr. Fournier to see if you can work

17   out an order that you're in a position to represent that Mr.

18   Fournier agrees that it's consistent with my ruling, without

19   prejudice to any rights to appeal, to the extent there are

20   such, or whatever.

21         If, after good faith efforts, you have to agree to

22   disagree, then you can settle it, but I want you to try to

23   work it out with Mr. Fournier in the first instance.

24         For the time being, until any further order is

25   entered, the assets in the U.S. are going to remain protected



1   across the board.

2          Mr. Fournier, I asked Mr. Shore if he had any

3   further matters he wanted to bring to my attention, and I

4   didn't ask you.

5          MR. FOURNIER:  No, Your Honor.

6          THE COURT:  Okay, thank you very much, folks.

7   We're adjourned.

8                    (Time noted:  11:55 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1

2                          <u>CERTIFICATE</u>

3

4

5        I, Randel Raison, certify that the foregoing is a

6   correct transcript from the official electronic sound

7   recording of the proceedings in the above-entitled matter, to

8   the best of my ability.

9   *Randel Raison* (signature)

10  _____            October 27, 2014

11  Randel Raison

12

13

14

15

16

17

18

19

20

21

22

23

24

25


ESQUIRE
DEPOSITION SOLUTIONS

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com